Earle V. POWELL, Commissioner, Department of Economic Security, Commonwealth of Kentucky, Appellant,

v.

Clara Mae SULFRIDGE et al., Appellees.

Court of Appeals of Kentucky.

March 5, 1965.

Paul E. Tierney, Department of Economic Security, Forest Smith, Frankfort, for appellant.

William S. Tribell, Middlesboro, for appellees.

DAN M. GRIFFITH, Special Commissioner.

Clara Mae Sulfridge, wife of Alfred Sulfridge and mother of six infant children, filed an application with the Division of Public Assistance of the Department of Economic Security for aid for her dependent children on the grounds that her husband was incapacitated to afford them the necessities of life. Her application was denied by the local office, the referee, and the appeal board of the Department. Upon appeal to the circuit court, the decision of the Department was reversed. The applicant's husband was found to be totally and permanently incapacitated and the applicant entitled to the aid she sought. From this judgment the Department has appealed.

The question presented is whether the record made before the Department contains evidence of probative value supporting the Department's determination that the applicant's husband was not incapacitated. If such evidence is to be found in the record, the judgment of the lower court must be reversed and the ruling of the Department left undisturbed. Barnes v. Turner, Ky., 280 S.W.2d 185. On the other hand, if there is no evidence of probative value supporting the Department's decision, the lower court's judgment reversing its ruling was proper and should be affirmed.

The Department, by regulation adopted pursuant to KRS 205.160, defines incapacity as follows: "Incapacity is any condition of mind or body which makes a parent physically or mentally unable to provide the necessities of life for his child * * *." The Department, by the same regulation, further provides that if the incapacity of the father is involved, "the incapacity must prevent him from working in an occupation in which he previously engaged, and prevent him from working at another job accessible in the county or community where he normally resides, for which he is equipped to do * * *."

Tested by this definition, we have been unable to find any evidence of probative value supporting the Department's determination that Sulfridge was not incapacitated. The record made before the Department will now be reviewed.

The record shows that Alfred Sulfridge is a 30-year-old resident of Pineville. He is the father of five children, ranging in age from 3 to 7 years, and the stepfather of one child born to Clara Mae Sulfridge out of wedlock. Sulfridge attended school until the fourth grade. Since 1962 his only reported earnings amounted to approximately $206. Suffice it to say that it is apparent from the record that the children's need is great and the conditions under which they live are deplorable.

The application resulting in this appeal was the last of seven such applications filed by the applicant since 1951. The record contains medical evidence in regard to Sulfridge's physical condition in the form of two reports filed by medical doctors as a result of examinations on previous applications. One report was dated April 23, 1957; the other, March 29, 1961. The 1957 report concluded that Sulfridge was suffering from mild epilepsy dating from about 1953. The doctor commented as follows: "This individual is not curable from the standpoint of his epilepsy which dates back to a car accident in 1953, but he states that he is fairly well controlled on medication and has been working with this condition since 1953." The doctor stated that Sulfridge "may perform moderate work." The 1961 medical report related only that Sulfridge needed dental treatment and was able to administer his resources. It is not helpful.

The present application was filed on November 7, 1962. Upon the filing of this application, the Department made arrangements for Sulfridge to have psychiatric evaluations. He was examined by two psychiatrists and given an I. Q. test by a psychologist. The first examination was made by Dr. George L. Gee. Dr. Gee reported to the Department as follows: "We are diagnosing the patient's condition as in-

adequate borderline defective, illiterate schizoid neurotic, who may have been epileptic in the past. He has probably only worked about a total of 3 years during the last 10 years and we would strongly recommend that welfare assistance (ADC) be granted if at all possible. He does have some desire to work and to be more adequate than he actually is and he could certainly be encouraged to do as much as he is capable of doing. At any rate this man has never been and most likely will never be capable of sustained public productivity. He and his wife and family will need as much financial and emotional support as your department can possibly offer."

After receiving this report, the Department referred Sulfridge to a psychiatric clinic in Lexington. There he was examined by Dr. Donald I. George, a psychiatrist, and was given an intelligence test by Dr. Harold W. Meek, a clinical psychologist. Dr. George diagnosed Sulfridge as follows: "(1) Personality disorder, inadequate type; (2) Mental deficiency, I. Q. 71." He concluded his report with this comment: "This is a mixed picture of personality problems plus low intellect in a man with very poor background with no opportunity to mobilize what capacities he has had. I feel he is significantly incapacitated and needs help. It is doubtful if he could profit by a formal vocational rehabilitation program but it is noted that he does respond to encouragement and praise and possibly could be placed in some type of work where he could be closely supervised and encouraged and his limitations understood."

The test administered by Dr. Meek, the psychologist, showed Sulfridge to be of "borderline" intelligence with an "inadequate personality." He stated that he had the mental capacity to learn simple jobs of skill but probably would have to be well supervised.

A Social Data Report by an employee of the Department dated December 4, 1962, concluded as follows: "Work is acces-

sible; pick up and odd job work is about all he has done ever and it is not felt he has the mental capacity to do any gainful work."

On the basis of the medical record as above summarized, and the lay testimony of Sulfridge and members of his family in regard to his general poor health and his epileptic seizures, the Department concluded Sulfridge was not incapacitated.

Although we are reluctant to interfere with the Department's determination in a case of this nature, after a careful review of the record we are constrained to conclude that the evidence clearly shows that Sulfridge is incapacitated within the Department's definition of that term and that the record contains no evidence of probative value supporting the Department's contrary ruling. It is conceded by the Department that an I. Q. of 69, or two points lower than that at which a psychologist examining Sulfridge placed his I. Q., would of itself show "incapacity." This borderline mental ability combined with grave psychiatric deficiencies in an illiterate, epileptic, totally untrained man makes the conclusion of incapacity inescapable. Perhaps the Department based its findings upon the comment of the psychologist who administered an intelligence test to Sulfridge that he was capable of learning simple jobs or skills but probably would have to be well supervised. It seems to us that this statement, when given its full value and greatest weight, stops short of being evidence supporting the Department's conclusion that this man is capable of providing his children with the necessities of life.

The only other evidence in the record that might possibly be considered as support for the Department's conclusion was the statement contained in a medical report dated April 23, 1957, that Sulfridge "may perform moderate work." Assuming without deciding that the Department may properly consider in a case of this nature medical reports obtained by it pursuant to previous applications concerning the in-

dividual involved, the 1957 medical report in this record was so remote in time as to be of no probative value on the issue of the capacity of Sulfridge at the time of the Department's decision more than five years after the report. The record in this respect was stale. See 2 Am.Jur.2d, Administrative Law, Section 687, page 572.

It is recommended that the judgment be affirmed.

The opinion is approved by the Court and the judgment is affirmed.